**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| COLT INTERNATIONAL CLOTHING, INC. d/b/a COLT LED, | Civil Action No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| QUASAR SCIENCE LLC, VITEC PRODUCTION SOLUTIONS INC., HERC ENTERTAINMENT SERVICES LLC, CINELEASE, INC., SONY PICTURES ENTERTAINMENT INC., WARNER BROS. ENTERTAINMENT INC., FOX CORPORATION, STEVEN STRONG, RAYMOND GONZALES, JAY YOWLER, and EVANS BROWN, | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Colt International Clothing, Inc. d/b/a Colt LED ("Colt"), by and through its attorneys, complains of Defendants, Quasar Science LLC ("Quasar"), Vitec Production Solutions Inc. ("Vitec"), Herc Entertainment Services LLC ("Herc"), Cinelease, Inc. ("Cinelease"), Sony Pictures Entertainment Inc. ("Sony"), Warner Bros. Entertainment Inc. ("Warner Bros."), Fox Corporation ("Fox"), Steven Strong ("Mr. Strong"), Raymond Gonzales ("Mr. Gonzales"), Jay Yowler ("Mr. Yowler"), and Evans Brown ("Mr. Brown") (Quasar, Vitec, Herc, Cinelease, Sony, Warner Bros., Fox, Mr. Strong, Mr. Gonzales, Mr. Yowler, and Mr. Brown are hereinafter collectively referred to as "Defendants"), as follows:

## NATURE OF THE ACTION

1. This is an action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

**THE PARTIES**

2.      Colt is a corporation organized under the laws of the State of California with its principal place of business in Santa Clarita, California. Colt offers for lease/sale and leases/sells high quality light emitting diode ("LED") lighting tubes (among other products) used primarily in the entertainment industry.

3.      After a significant amount of hard work, research, and development, Colt's President, Guillermo Macias ("Mr. Macias"), designed and introduced an elongated two-color light bulb ("bicolor tube") that is extremely useful for illuminating an area or volume of space.

4.      This bicolor tube invention is particularly useful and valuable in photography and movie making industries and took these industries by storm. The bicolor tube can produce two different types of white light, whichever is desired for a particular scene, without having to change bulbs or filters. This substantially reduces rigging time and, given the expensive nature of film and television crew time, results in huge savings. As a result, Mr. Macias' bicolor tubes are used by photography and movie studios throughout the nation, and in other countries as well.

5.      Mr. Macias also developed an elongated multi-color light bulb ("multicolor tube") that is extremely useful for illuminating an area or volume of space with five different types of light such as red, green, blue, amber, and bright white without having to change bulbs or filters. This substantially reduces rigging time and, given the expensive nature of film and television crew time, results in huge savings.

6.      The launch of Colt's innovative bicolor and multicolor tubes was a smashing commercial success in the marketplace. These products, embodied in the asserted patents, are new, unique, and a great advance over existing products in the field.

7.      Upon information and belief, Quasar is a limited liability company organized under the laws of the State of Delaware having a place of business at 687 S. Anderson Street, Los Angeles, California 90023.

8.      Upon information and belief, Vitec is a corporation organized under the laws of the State of Delaware having a place of business at 14 Progress Drive, Shelton, Connecticut 06484.

9.      In or around April 2021, Vitec acquired Quasar. In an article published on April 16, 2021, Nicola Dal Toso, chief executive of Vitec, stated, "Quasar Science products are highly complementary to our Litepanels brand. . . . There are growth opportunities to sell Quasar Science products through our global sales and distribution network. . . ." (*See* https://ascmag.com/articles/vitec-group-acquires-quasar-science.)

10.     Upon information and belief, Herc is a limited liability company organized under the laws of the state of Delaware having places of business at, for example, 1245 Grand Street Brooklyn, New York 11211; 220 48th Street, Pittsburgh, Pennsylvania 15201; 1420 South Rockwell Street, Chicago, Illinois 60608; 4729 River Road, New Orleans, Louisiana 70121; and 531 Gallatin Place, NW Suite A, Albuquerque, New Mexico 87121.

11.     Upon information and belief, Cinelease is a corporation organized under the laws of the State of Delaware having places of business at 1245 Grand Street Brooklyn, New York 11211; 220 48th Street, Pittsburgh, Pennsylvania 15201; 1420 South Rockwell Street, Chicago, Illinois 60608; 4729 River Road, New Orleans, Louisiana 70121; and 531 Gallatin Place, NW Suite A, Albuquerque, New Mexico 87121.

12.     In or around January 2012, Herc acquired Cinelease, and the two companies have operated as an integrated business since that acquisition. In an article published on January 20, 2012, Mark Frissora, Herc's (formerly known as Hertz Entertainment Services on information and

belief) chairman and CEO stated, "Cinelease will accelerate the growth of our Entertainment Service business because Hertz is uniquely able to bundle a wide variety of products for film and television companies, from lights, grip, generators, cranes and lifts to the widest selection of rental cars in the industry." (*See* https://www.rermag.com/news-analysis/headline-news/article/20935823/hertz-acquires-cinelease-grip-and-lighting-rental-company.)

13.     Upon information and belief, Sony is a corporation organized under the laws of the State of Delaware having a place of business at 10202 West Washington Boulevard, Culver City, California 90232.

14.     Upon information and belief, Warner Bros. is a corporation organized under the laws of the State of Delaware having a place of business at 4000 Warner Boulevard, Burbank, California 91522.

15.     Upon information and belief, Fox is a corporation organized under the laws of the State of Delaware having a place of business at 1211 Avenue of the Americas, New York, New York 10036.

16.     Upon information and belief, Mr. Strong – Chief Executive Officer, Founder & Partner of Quasar – is a manager, member, and/or otherwise participates materially in the management of Quasar. (*See, e.g.,* https://beta.quasarscience.com/about-us/; *see also* https://www.lsionline.com/vitec-group-acquires-quasar-science (stating that Quasar "[c]o-founders Steven Strong, Evans Brown, Jay Yowler and Ray Gonzales will remain with the company [Quasar] and continue to lead the team post-acquisition" of Quasar by Vitec).)

17.     Upon information and belief, Mr. Gonzales – Chief Operation Officer, Founder & Partner of Quasar – is a manager, member, and/or otherwise participates materially in the management of Quasar. (*See, e.g.,* https://beta.quasarscience.com/about-us/; *see also* https://www.

lsionline.com/vitec-group-acquires-quasar-science (stating that Quasar "[c]o-founders Steven Strong, Evans Brown, Jay Yowler and Ray Gonzales will remain with the company [Quasar] and continue to lead the team post-acquisition" of Quasar by Vitec).)

18.     Upon information and belief, Mr. Yowler – Chief Lighting Technician, Founder & Partner of Quasar – is a manager, member, and/or otherwise participates materially in the management of Quasar. (*See, e.g.,* https://beta.quasarscience.com/about-us/; *see also* https://www. lsionline.com/vitec-group-acquires-quasar-science (stating that Quasar "[c]o-founders Steven Strong, Evans Brown, Jay Yowler and Ray Gonzales will remain with the company [Quasar] and continue to lead the team post-acquisition" of Quasar by Vitec).)

19.     Upon information and belief, Mr. Brown – Director of Photography, Founder & Partner of Quasar – is a manager, member, and/or otherwise participates materially in the management of Quasar. (*See, e.g.,* https://beta.quasarscience.com/about-us/; *see also* https://www. lsionline.com/vitec-group-acquires-quasar-science (stating that Quasar "[c]o-founders Steven Strong, Evans Brown, Jay Yowler and Ray Gonzales will remain with the company [Quasar] and continue to lead the team post-acquisition" of Quasar by Vitec).)

20.     Colt and Quasar/Vitec directly compete with each other for the rental and/or sale of lighting equipment in the United States. Cinelease/Herc, Warner Bros., Sony, and Fox utilize and/or lease lighting equipment produced by Quasar.

21.     Colt reserves the right to amend this complaint to name additional defendants if and when they have been ascertained.

## JURISDICTION AND VENUE

22.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a)-(b).

23.     This Court has personal jurisdiction over Quasar, Vitec, Herc, Cinelease, Sony, Warner Bros., and Fox because Quasar, Vitec, Herc, Cinelease, Sony, Warner Bros., and Fox reside in this judicial district and have, as discussed in greater detail below, committed acts of patent infringement in this judicial district.

24.     Each of Quasar, Vitec, Herc, Cinelease, Sony, Warner Bros., and Fox is incorporated and/or organized under the laws of the State of Delaware, and each of Quasar, Vitec, Herc, Cinelease, Sony, Warner Bros., and Fox maintains a registered agent for service of process in this judicial district.

25.     Pursuant to Section 109(a) of the Delaware Limited Liability Company Act, this Court has personal jurisdiction over Messrs. Strong, Gonzales, Yowler, and Brown, each of whom is, on information and belief, an officer, founder, partner, manager, member, and/or otherwise participates materially in the management of Quasar. 6 Del. C. § 18-109(a) (*See, e.g.,* https://beta.quasarscience.com/about-us/; *see also* https://www.lsionline.com/vitec-group-acquir es-quasar-science (stating that Quasar "[c]o-founders Steven Strong, Evans Brown, Jay Yowler and Ray Gonzales will remain with the company [Quasar] and continue to lead the team post-acquisition" of Quasar by Vitec).) Also, as discussed in greater detail below, Messrs. Strong, Gonzales, Yowler, and Brown have committed acts of patent infringement in this judicial district.

26.     Defendants' accused products are used, leased, offered to be leased, offered to be sold, and/or sold throughout the United States, including in this judicial district. Specifically, Defendants are offering to sell, selling, offering to lease, leasing, advertising, and/or using the Q-Line Crossfade lights (Model Nos. Q15W2060XG, Q15W2060XG-240, Q25W2060XG, Q25W2060XG-240, Q50W2060XG, Q50W2060XG-240, Q75W2060XG, Q75W2060XG-240, Q100W2060XG, and Q100W2060XG-240) (collectively, the "Crossfade Lights"); Q-Line S-

Switch lights (Model Nos. Q15W3056SG, Q15W3056SG-240,Q25W3056SG, Q25W3056SG-240, Q25W3056S2, Q50W3056SG, Q50W3056SG-240, Q50W3056S2, Q75W3056SG-240, Q75W3056SG, Q100W3056G, Q100W3056G-240, and Q100W3056S2) (collectively, the "S-Switch Lights"); Q-Lion Linear Battery Lights (Model Nos. Q5WLS, Q10WLS, and Q20WLS) (collectively, the "Q-Lion Lights"); and R2 Rainbow 2 lights (Model Nos. Q25R2, Q50R2, and Q100R2) (collectively, the "Rainbow Lights") (the Crossfade Lights, the S-Switch Lights, the Q-Lion Lights, and the Rainbow Lights are hereinafter collectively referred to as the "Accused Products") in such a way as to reach customers in Delaware and this judicial district, thus specifically committing acts of infringement in this judicial district which give rise to this lawsuit.

27.    All of Colt's claims further described herein arise out of the same nucleus of operative facts.

28.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). *See, e.g., TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017); *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).

## THE PATENTS-IN-SUIT

29.    On August 1, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 9,719,642 ("the '642 patent") entitled "Tube Light with Improved LED Array." Colt owns, is the assignee of, and has standing to sue for infringement of the '642 patent. The '642 patent (and the other patents asserted in this action) claim a priority date of May 17, 2012, which is the date Mr. Macias filed his original provisional patent application with the USPTO first disclosing his bicolor tube innovation (Provisional Patent Application Serial No. 61/648,554). The claims of the '642 patent have been reexamined by the USPTO, twice. A

copy of the '642 patent and the two reexamination certificates of the '642 patent are attached hereto as Exhibit A.

30.     On December 19, 2017, the USPTO duly and legally issued U.S. Patent No. 9,845,924 ("the '924 patent") entitled "Tube Light with Improved LED Array." Colt owns, is the assignee of, and has standing to sue for infringement of the '924 patent. The claims of the '924 patent have also twice been reexamined by the USPTO. A copy of the '924 patent and the two reexamination certificates of the '924 patent are attached hereto as Exhibit B.

31.     On February 5, 2019, the USPTO duly and legally issued U.S. Patent No. 10,197,224 ("the '224 patent") entitled "Multicolored Tube Light with Improved LED Array." Colt owns, is the assignee of, and has standing to sue for infringement of the '224 patent. A copy of the '224 patent is attached hereto as Exhibit C.

32.     On September 10, 2019, the USPTO duly and legally issued U.S. Patent No. 10,411,582 ("the '582 patent") entitled "Tube Light with Improved LED Array." Colt owns, is the assignee of, and has standing to sue for infringement of the '582 patent. A copy of the '582 patent is attached hereto as Exhibit D.

33.     On February 18, 2020, the USPTO duly and legally issued U.S. Patent No. 10,566,895 ("the '895 patent") entitled "Tube Light with Improved LED Array." Colt owns, is the assignee of, and has standing to sue for infringement of the '895 patent. A copy of the '895 patent is attached hereto as Exhibit E.

34.     On July 21, 2020, the USPTO duly and legally issued U.S. Patent No. 10,718,473 ("the '473 patent") entitled "Tube Light with Improved LED Array" (the '642, '924, '224, '582, '895, and '473 patents are hereinafter collectively referred to as the "Colt patents" or the "patents-

in-suit"). Colt owns, is the assignee of, and has standing to sue for infringement of the '473 patent. A copy of the '473 patent is attached hereto as Exhibit F.

35.    At all times relevant to the present action, the Colt patents have been and are owned by Colt, valid and active, and fully enforceable against Defendants.

## FACTUAL BACKGROUND

36.    Prior to filing this lawsuit, Colt obtained samples of certain of the Accused Products manufactured by Quasar. Colt therefore attaches hereto as Exhibit G a number of images taken of such samples of Quasar's Crossfade Lights, S-Switch Lights, Q-Lion Lights, and Rainbow Lights.

37.    Upon close inspection of the Accused Products, along with the content and images provided by Quasar through its website advertising, it is evident that the Accused Products infringe the Colt patents.

38.    Colt has not licensed or otherwise authorized any of Defendants (or their dealers, customers, affiliates, or the like) to make, use, sell, lease, offer to lease, or offer to sell the Accused Products or any systems that fall within the scope of any of the claims of the Colt patents.

39.    Upon information and belief, Quasar/Vitec rent and/or sell, and have rented and/or sold, the Accused Products to Cinelease/Herc, Warner Bros., Sony, and Fox (and potentially others), and Cinelease/Herc, Warner Bros., Sony, and Fox lease and/or re-sell, and/or have leased and/or re-sold, the Accused Products to various companies, photography, production companies, and/or movie studios, which then use the Accused Products in precisely the manner and configuration as covered by the Colt patents.

40.    On May 31, 2017, Colt notified Cinelease of the USPTO's allowance and imminent issuance of a patent for Colt's "bicolor tubular LED light" – via email correspondence to Quasar's counsel of record at that time, Michael Baranov ("Mr. Baranov") – that the USPTO had announced

that it (the USPTO) would be granting to Colt on August 1, 2017 a new patent, as well as the content and scope of the patent claims in the new patent.

41.     Then, at least as of August 2, 2017, Colt provided written notice to Cinelease of the existence and scope of the '642 patent to Mr. Baranov and, at least as of August 2, 2017, to Neale R. Bedrock, Assistant General Counsel for Herc (which entity, on information and belief, owns and/or controls Cinelease), demanding that Cinelease immediately cease and desist from all such infringing activity.

42.     On August 4, 2017, Colt also provided written notice to Warner Bros. – via letter to Wayne W. Smith, Senior Vice President, Senior Litigation & Chief Patent Counsel for Warner Bros. ("Mr. Smith") – of the existence and scope of the '642 patent and demanding that Warner Bros. immediately cease and desist from all such infringing activity.

43.     On October 15, 2017, Colt filed a complaint in the case captioned *Colt International Clothing, Inc. v. Quasar Science, LLC et. al.*, Case No. 2:17-cv-7325 (C.D. Cal.) (the "First LED Case"), alleging that Quasar Science, LLC (then a California LLC and predecessor of Quasar named in this complaint ("Old Quasar")), Cinelease, and Warner Bros. were infringing the '642 patent.

44.     On January 9, 2018, Colt amended its complaint in the First LED Case, alleging that Old Quasar, Cinelease, and Warner Bros. were also infringing the '924 patent.

45.     On May 30, 2018 and June 12, 2018, Old Quasar filed first requests for reexamination of the '642 and '924 patents, respectively.

46.     On March 29, 2019, Colt provided written notice to Mr. Smith of Warner Bros. that (i) the USPTO confirmed the patentability of several claims of the '642 patent (including, but not limited to, original (unamended) claims 8-11 and 14), and (ii) Warner Bros. is leasing certain

10

accused bicolor tubes that were made and/or sold by Old Quasar/Quasar, which tubes infringe upon the '642 patent. Colt demanded in its March 29, 2019 letter that Warner Bros. immediately cease and desist from all such infringing activity and make an appropriate monetary payment to Colt.

47.     In another March 29, 2019 letter to Mr. Smith of Warner Bros., Colt provided written notice that (i) the '224 patent issued on February 5, 2019, and (ii) Warner Bros. is leasing certain accused multicolor tubes that were made and/or sold by Old Quasar/Quasar, which tubes infringe upon the '224 patent. Colt demanded in its March 29, 2019 letter that Warner Bros. immediately cease and desist from all such infringing activity and make an appropriate monetary payment to Colt.

48.     On September 4, 2019, Old Quasar filed second requests for reexamination of the '642 and '924 patents.

49.     On February 6, 2020, Colt, Old Quasar, Cinelease, and Warner Bros. submitted a stipulation of dismissal without prejudice in the First LED Case, to be potentially refiled in the future, of all asserted claims.

50.     On November 10, 2020, Colt provided written notice to Mr. Baranov and Craig Bailey – on information and belief, Old Quasar's/Quasar's, Cinelease's, and Warner Bros.'s counsel at that time – that Old Quasar/Quasar was selling and/or leasing certain accused bicolor tubes to other parties that were using and/or leasing said tubes (including, but not limited to, Cinelease and Warner Bros.), which tubes infringe upon the '895 and '473 patents. Colt demanded in its November 10, 2020 letter that Old Quasar/Quasar, Cinelease, and Warner Bros. immediately cease and desist from all such infringing activity and make an appropriate monetary payment to Colt.

51.    On May 21, 2021, counsel for Colt emailed Fred Fellmeth, General Counsel for Vitec, notifying Vitec of, *inter alia*, the First LED Case (including the '642 and '924 patents at issue in that case) and the outcome of the second reexamination proceeding of the '642 patent, and proposing that the parties explore options to resolve the parties' dispute through a negotiated settlement. The parties were unable to reach an agreement.

52.    Defendants' infringement of the Colt patents, therefore, is willful and has been for some time, and has caused (and continues to cause) Colt commercial injury, lost sales, and/or lost profits. Indeed, upon information and belief, Quasar has not altered its products and has not stopped its marketing, conduct, or dealings with respect to the Accused Products since first learning of the Colt patents, their scope, and Defendants' infringement of the same.

53.    By way of example but not limitation, subject to further evidence obtained during discovery, and as set forth above, Old Quasar/Quasar has been aware of the '642 patent and its infringement of the same at least as early as August 1, 2017; Cinelease/Herc have been aware of the '642 patent and their infringement of the same at least as early as August 2, 2017; Warner Bros. has been aware of the '642 patent and its infringement of the same at least as early as August 4, 2017; Old Quasar/Quasar, Cinelease/Herc, and Warner Bros. have been aware of the '924 patent and their infringement of the same at least as early as January 9, 2018; Warner Bros. has been aware of the '224 patent and its infringement of the same at least as early as March 29, 2019; Old Quasar/Quasar, Cinelease/Herc, and Warner Bros. have been aware of the '895 and '473 patents, and their infringement of the same, at least as early as November 10, 2020; and Vitec has been aware of the '642 and '924 patents, and its infringement of the same, at least as early as May 21, 2021.

54.     In fact, seeing the success of Colt's innovative bicolor tubes, Old Quasar decided to copy Colt's inventions rather than develop unique products of its own. By way of example only, after obtaining a sample of Colt's bicolor tubes (which tube included Colt's name and distinctive company logo), Messrs. Strong, Gonzales, and Yowler, as well as Andy Lau – each of whom was, on information and belief, an officer, founder, partner, manager, member, and/or otherwise participated materially in the management of Old Quasar – met in approximately 2013 with Mr. Zhang Ya Jun ("Mr. Zhang"), owner of Laysion Tech Inc., a company located in the Guangdong province of China that designs and manufactures LED lights and equipment. Mr. Gonzales specifically instructed Mr. Zhang to copy the Colt bicolor tube.

55.     After closely examining and analyzing the Colt bicolor tube, and per Mr. Gonzales' instructions, Mr. Zhang manufactured approximately 10,000 bicolor tubes for Old Quasar, which tubes were exact copies (down to the very last detail) of the Colt bicolor tube. Indeed, Mr. Zhang closely tested the Colt bicolor tube against the bicolor tubes manufactured for Old Quasar and confirmed that the tubes were structurally and functionally identical.

56.     Accordingly, since Colt first introduced its unique bicolor tubes in the marketplace, Old Quasar (and now Quasar) has copied Colt's bicolor tube inventions.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,719,642

57.     Colt repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

58.     This claim is against all Defendants, and each of them, for patent infringement under 35 U.S.C. §§ 101 *et seq*., including specifically, § 271(a).

59.     Defendants have infringed the '642 patent by making, using, importing, offering to sell, selling, offering to lease, and/or leasing, and continuing to make, use, import, offer to sell,

sell, offer to lease, and/or lease the Accused Products, which come within the scope of at least one claim of the '642 patent. The Accused Products contain each and every element of at least one claim of the '642 patent both literally and under the doctrine of equivalents in contravention of 35 U.S.C. § 271. Specifically, the Q15W3056SG, Q15W3056SG-240, Q50W3056SG, and Q50W3056SG-240 models of the S-Switch Lights infringe at least claims 1, 4, 8-11, 15, 16, 20, 22-31, and 33-38 of the '642 patent. The Q5WLS model of the Q-Lion Lights infringes at least claim 15 of the '642 patent, and the Q10WLS and Q20WLS models of the Q-Lion Lights infringe at least claims 15 and 29 of the '642 patent.

60.    By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit H a claim chart depicting one way in which certain models of the S-Switch Lights infringe one or more claims of the '642 patent.

61.    By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit I a claim chart depicting one way in which certain models of the Q-Lion Lights infringe one or more claims of the '642 patent.

62.    The making, using, importing, offering to sell, selling, offering to lease, and/or leasing of the Accused Products by Defendants, and/or contributing to and/or inducing the infringing activities of others, has been without authority or license from Colt and is in violation of Colt's rights under the '642 patent, thereby infringing the '642 patent.

63.    Upon information and belief, Colt alleges that Defendants' foregoing infringing acts have been with full knowledge of Colt's rights and interests, thereby constituting willful patent infringement.

64.     Colt has been damaged by Defendants' acts as alleged in this complaint, and Defendants have improperly profited thereby. Defendants are therefore liable to Colt for money damages pursuant to 35 U.S.C. § 284. Colt is entitled to a complete accounting of all revenue derived by Defendants from the unlawful conduct alleged herein in order to determine the full amount of money damages which Colt has suffered due to Defendants' acts of infringement, with Colt being entitled to damages adequate to fully compensate it for the infringements.

65.     The harm to Colt arising from Defendants' acts of infringement of the '642 patent is not fully compensable by money damages. Rather, Colt has suffered and continues to suffer irreparable harm which has no adequate remedy at law, and which will continue unless Defendants' conduct is enjoined. Defendants must therefore be enjoined and deterred from any further violations of Colt's rights in the '642 patent through a permanent injunction.

66.     Colt has complied with 35 U.S.C. § 287 as to the '642 patent to the extent required by law.

67.     Defendants should also be required to pay Colt's attorneys' fees, expenses, and costs for their willful and blatant disregard of Colt's patent rights.

## COUNT II – INFRINGEMENT OF U.S. UTILITY PATENT NO. 9,845,924

68.     Colt repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

69.     This claim is against all Defendants, and each of them, for patent infringement under 35 U.S.C. §§ 101 *et seq*., including specifically, § 271(a).

70.     Defendants have infringed the '924 patent by making, using, importing, offering to sell, selling, offering to lease, and/or leasing, and continuing to make, use, import, offer to sell, sell, offer to lease, and/or lease the Accused Products, which come within the scope of at least one

claim of the '924 patent. The Accused Products contain each and every element of at least one claim of the '924 patent both literally and under the doctrine of equivalents in contravention of 35 U.S.C. § 271. The Q15W3056SG and Q15W3056SG-240 of the S-Switch Lights infringe at least claims 8, 9, 10, 14, 15, 44, and 46 of the '924 patent. The Q25W3056SG, Q25W3056SG-240, Q25W3056S2, Q50W3056SG, Q50W3056SG-240, and Q50W3056S2 of the S-Switch Lights infringe at least claims 1, 2, 8-10, 12-16, 20-23, 26-30, 32-34, and 41-49 of the '924 patent. The Q50W3056SG, Q50W3056SG-240, and Q50W3056S2 of the S-Switch Lights also infringe at least claims 24, 35, 36, and 38-40 of the '924 patent. The Q75W3056SG-240, Q75W3056SG, Q100W3056G, Q100W3056G-240, and Q100W3056S2 of the S-Switch Lights infringe at least claims 1, 2, 20-22, 26-30, 32-34, and 43 of the '924 patent. The Q-Lion Lights infringe at least claims 15 and 46 of the '924 patent. The Q20WLS of the Q-Lion Lights also infringes at least claims 1, 2, 12, 20-23, 26-30, 32-34, 43 and 45-46 of the '924 patent.

71.    By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit J a claim chart depicting one way in which certain models of the S-Switch Lights infringe one or more claims of the '924 patent.

72.    By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit K a claim chart depicting one way in which certain models of the Q-Lion Lights infringe one or more claims of the '924 patent.

73.    The making, using, importing, offering to sell, selling, offering to lease, and/or leasing of the Accused Products by Defendants, and/or contributing to and/or inducing the

infringing activities of others, has been without authority or license from Colt and is in violation of Colt's rights under the '924 patent, thereby infringing the '924 patent.

74.    Upon information and belief, Colt alleges that Defendants' foregoing infringing acts have been with full knowledge of Colt's rights and interests, thereby constituting willful patent infringement.

75.    Colt has been damaged by Defendants' acts as alleged in this complaint, and Defendants have improperly profited thereby. Defendants are therefore liable to Colt for money damages pursuant to 35 U.S.C. § 284. Colt is entitled to a complete accounting of all revenue derived by Defendants from the unlawful conduct alleged herein in order to determine the full amount of money damages which Colt has suffered due to Defendants' acts of infringement, with Colt being entitled to damages adequate to fully compensate it for the infringements.

76.    The harm to Colt arising from Defendants' acts of infringement of the '924 patent is not fully compensable by money damages. Rather, Colt has suffered and continues to suffer irreparable harm which has no adequate remedy at law, and which will continue unless Defendants' conduct is enjoined. Defendants must therefore be enjoined and deterred from any further violations of Colt's rights in the '924 patent through a permanent injunction.

77.    Defendants should also be required to pay Colt's attorneys' fees, expenses, and costs for their willful and blatant disregard of Colt's patent rights.

## COUNT III – INFRINGEMENT OF U.S. UTILITY PATENT NO. 10,411,582

78.    Colt repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

79.    This claim is against all Defendants, and each of them, for patent infringement under 35 U.S.C. §§ 101 *et seq*., including specifically, § 271(a).

80.    Defendants have infringed the '582 patent by making, using, importing, offering to sell, selling, offering to lease, and/or leasing, and continuing to make, use, import, offer to sell, sell, offer to lease, and/or lease the Accused Products, which come within the scope of at least one claim of the '582 patent. The Accused Products contain each and every element of at least one claim of the '582 patent both literally and under the doctrine of equivalents in contravention of 35 U.S.C. § 271. Specifically, the S-Switch Lights infringe at least claims 1-3, 6-9, 14, 16, and 17 of the '582 patent. The Q25W3056SG, Q25W3056SG-240, and Q25W3056S2 of the S-Switch Lights further infringe claims 10, 11, 18, 19, 21-24, 26-28 and 31 of the '582 patent. The Q50W3056SG, Q50W3056SG-240, and Q50W3056S2 of the S-Switch Lights further infringe at least claims 10-14, 16-19, 21-24, and 26-31 of the '582 patent.

81.    By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit L a claim chart depicting one way in which certain models of the S-Switch Lights infringe one or more claims of the '582 patent.

82.    The making, using, importing, offering to sell, selling, offering to lease, and/or leasing of the Accused Products by Defendants, and/or contributing to and/or inducing the infringing activities of others, has been without authority or license from Colt and is in violation of Colt's rights under the '582 patent, thereby infringing the '582 patent.

83.    Upon information and belief, Colt alleges that Defendants' foregoing infringing acts have been with full knowledge of Colt's rights and interests, thereby constituting willful patent infringement.

84.    Colt has been damaged by Defendants' acts as alleged in this complaint, and Defendants have improperly profited thereby. Defendants are therefore liable to Colt for money

damages pursuant to 35 U.S.C. § 284. Colt is entitled to a complete accounting of all revenue derived by Defendants from the unlawful conduct alleged herein in order to determine the full amount of money damages which Colt has suffered due to Defendants' acts of infringement, with Colt being entitled to damages adequate to fully compensate it for the infringements.

85.     The harm to Colt arising from Defendants' acts of infringement of the '582 patent is not fully compensable by money damages. Rather, Colt has suffered and continues to suffer irreparable harm which has no adequate remedy at law, and which will continue unless Defendants' conduct is enjoined. Defendants must therefore be enjoined and deterred from any further violations of Colt's rights in the '582 patent through a permanent injunction.

86.     Defendants should also be required to pay Colt's attorneys' fees, expenses, and costs for their willful and blatant disregard of Colt's patent rights.

## COUNT IV – INFRINGEMENT OF U.S. UTILITY PATENT NO. 10,566,895

87.     Colt repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

88.     This claim is against all Defendants, and each of them, for patent infringement under 35 U.S.C. §§ 101 *et seq*., including specifically, § 271(a).

89.     Defendants have infringed the '895 patent by making, using, importing, offering to sell, selling, offering to lease, and/or leasing, and continuing to make, use, import, offer to sell, sell, offer to lease, and/or lease the Accused Products, which come within the scope of at least one claim of the '895 patent. The Accused Products contain each and every element of at least one claim of the '895 patent both literally and under the doctrine of equivalents in contravention of 35 U.S.C. § 271. Specifically, the Q15W2060XG and Q15W2060XG-240 of the Crossfade Lights infringe at least claims 1, 2, 6, 7, and 15 of the '895 patent. The Q25W2060XG and

Q25W2060XG-240 of the Crossfade Lights infringe at least claims 1, 2, 6, 7, 15, 16, 18, and 21 of the '895 patent. The Q50W2060XG and Q50W2060XG-240 of the Crossfade Lights infringe at least claims 1, 2, 6-9, 12, 13, 15, 16, 18, 21, and 22 of the '895 patent. The Q75W2060XG, Q75W2060XG-240, Q100W2060XG, and Q100W2060XG-240 of the Crossfade Lights infringe at least claims 1, 2, 6, 7, 12, 15, 16, 18, 21, and 22 of the '895 patent. The Q15W3056SG and Q15W3056SG-240 of the S-Switch lights infringe at least claims 1-3, 6, 7, 14, 15, 23, 24, and 27 of the '895 patent. The Q25W3056SG, Q25W3056SG-240, and Q25W3056S2 of the S-Switch lights infringe at least claims 1-3, 6, 7, 10, 11, 14-18, 21, 23, 24, and 27 of the '895 patent. The Q50W3056SG, Q50W3056SG-240, and Q50W3056S2 of the S-Switch lights infringe at claims 1-3, 6-18, 21-24, and 27-29 of the '895 patent. The Q75W3056SG-240, Q75W3056SG, Q100W3056G, Q100W3056G-240, and Q100W3056S2 of the S-Switch lights infringe at least claims 1-3, 6, 7, 10-12, 14-18, 21, and 22 of the '895 patent. The Q20WLS of the Q-Lion Lights infringes at least claims 16-18 and 21 of the '895 patent.

90.     By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit M a claim chart depicting one way in which certain models of the Crossfade Lights infringe one or more claims of the '895 patent.

91.     By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit N a claim chart depicting one way in which certain models of the S-Switch Lights infringe one or more claims of the '895 patent.

92.     By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit O a claim chart depicting one way in which certain models of the Q-Lion Lights infringe one or more claims of the '895 patent.

93.     The making, using, importing, offering to sell, selling, offering to lease, and/or leasing of the Accused Products by Defendants, and/or contributing to and/or inducing the infringing activities of others, has been without authority or license from Colt and is in violation of Colt's rights under the '895 patent, thereby infringing the '895 patent.

94.     Upon information and belief, Colt alleges that Defendants' foregoing infringing acts have been with full knowledge of Colt's rights and interests, thereby constituting willful patent infringement.

95.     Colt has been damaged by Defendants' acts as alleged in this complaint, and Defendants have improperly profited thereby. Defendants are therefore liable to Colt for money damages pursuant to 35 U.S.C. § 284. Colt is entitled to a complete accounting of all revenue derived by Defendants from the unlawful conduct alleged herein in order to determine the full amount of money damages which Colt has suffered due to Defendants' acts of infringement, with Colt being entitled to damages adequate to fully compensate it for the infringements.

96.     The harm to Colt arising from Defendants' acts of infringement of the '895 patent is not fully compensable by money damages. Rather, Colt has suffered and continues to suffer irreparable harm which has no adequate remedy at law, and which will continue unless Defendants' conduct is enjoined. Defendants must therefore be enjoined and deterred from any further violations of Colt's rights in the '895 patent through a permanent injunction.

97.    Defendants should also be required to pay Colt's attorneys' fees, expenses, and costs for their willful and blatant disregard of Colt's patent rights.

## COUNT V – INFRINGEMENT OF U.S. UTILITY PATENT NO. 10,718,473

98.    Colt repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

99.    This claim is against all Defendants, and each of them, for patent infringement under 35 U.S.C. §§ 101 *et seq*., including specifically, § 271(a).

100.   Defendants have infringed the '473 patent by making, using, importing, offering to sell, selling, offering to lease, and/or leasing, and continuing to make, use, import, offer to sell, sell, offer to lease, and/or lease the Accused Products, which come within the scope of at least one claim of the '473 patent. The Accused Products contain each and every element of at least one claim of the '473 patent both literally and under the doctrine of equivalents in contravention of 35 U.S.C. § 271. Specifically, the Q50W2060XG, Q50W2060XG-240, Q75W2060XG, Q75W2060XG-240, Q100W2060XG, and Q100W2060XG-240 of the Crossfade Lights infringe at least claims 1, 2, 6, 7, 10, 11, and 15 of the '473 patent. The Q15W3056SG and Q15W3056SG-240 of the S-Switch Lights infringe at least claim 18 of the '473 patent. The Q25W3056SG, Q25W3056SG-240, and Q25W3056S2 of the S-Switch Lights infringe at least claims 11, 12, and 18 of the '473 patent. The Q50W3056SG, Q50W3056SG-240, Q50W3056S2, Q75W3056SG-240, Q75W3056SG, Q100W3056G, Q100W3056G-240, and Q100W3056S2 of the S-Switch Lights infringe at least claims 1-3 and 6-12 of the '473 patent. The Q50W3056SG, Q50W3056SG-240, and Q50W3056S2 further infringe at least claim 18 of the '473 patent, and the Q50W3056S2 and Q100W3056S2 further infringe at least claim 16 of the '473 patent. The Q20WLS of the Q-Lion Lights infringes at least claims 11, 12, and 15 of the '473 patent.

101.    By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit P a claim chart depicting one way in which certain models of the Crossfade Lights infringe one or more claims of the '473 patent.

102.    By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit Q a claim chart depicting one way in which certain models of the S-Switch Lights infringe one or more claims of the '473 patent.

103.    By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit R a claim chart depicting one way in which certain models of the Q-Lion Lights infringe one or more claims of the '473 patent.

104.    The making, using, importing, offering to sell, selling, offering to lease, and/or leasing of the Accused Products by Defendants, and/or contributing to and/or inducing the infringing activities of others, has been without authority or license from Colt and is in violation of Colt's rights under the '473 patent, thereby infringing the '473 patent.

105.    Upon information and belief, Colt alleges that Defendants' foregoing infringing acts have been with full knowledge of Colt's rights and interests, thereby constituting willful patent infringement.

106.    Colt has been damaged by Defendants' acts as alleged in this complaint, and Defendants have improperly profited thereby. Defendants are therefore liable to Colt for money damages pursuant to 35 U.S.C. § 284. Colt is entitled to a complete accounting of all revenue

derived by Defendants from the unlawful conduct alleged herein in order to determine the full amount of money damages which Colt has suffered due to Defendants' acts of infringement, with Colt being entitled to damages adequate to fully compensate it for the infringements.

107.     The harm to Colt arising from Defendants' acts of infringement of the '473 patent is not fully compensable by money damages. Rather, Colt has suffered and continues to suffer irreparable harm which has no adequate remedy at law, and which will continue unless Defendants' conduct is enjoined. Defendants must therefore be enjoined and deterred from any further violations of Colt's rights in the '473 patent through a permanent injunction.

108.     Defendants should also be required to pay Colt's attorneys' fees, expenses, and costs for their willful and blatant disregard of Colt's patent rights.

## COUNT VI – INFRINGEMENT OF U.S. UTILITY PATENT NO. 10,197,224

109.     Colt repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

110.     This claim is against all Defendants, and each of them, for patent infringement under 35 U.S.C. §§ 101 *et seq*., including specifically, § 271(a).

111.     Defendants have infringed the '224 patent by making, using, importing, offering to sell, selling, offering to lease, and/or leasing, and continuing to make, use, import, offer to sell, sell, offer to lease, and/or lease the Accused Products, which come within the scope of at least one claim of the '224 patent. The Accused Products contain each and every element of at least one claim of the '473 patent both literally and under the doctrine of equivalents in contravention of 35 U.S.C. § 271. Specifically, the Rainbow Lights infringe at least claims 1, 3, 4, 7, 9-12, 23, 25, 26, 28, 29, 31-39, 41, and 43-45 of the '224 patent. The Q25R2 and Q50R2 of the Rainbow Lights further infringe at least claims 8, 30, and 42 of the '224 patent.

112.    By way of example only, and without waiving any right to assert any other infringement arguments relative to this or any other product, or of any other claims of the Colt patents either directly or indirectly, Colt attaches hereto as Exhibit S a claim chart depicting one way in which certain models of the Rainbow Lights infringe one or more claims of the '224 patent.

113.    The making, using, importing, offering to sell, selling, offering to lease, and/or leasing of the Accused Products by Defendants, and/or contributing to and/or inducing the infringing activities of others, has been without authority or license from Colt and is in violation of Colt's rights under the '224 patent, thereby infringing the '224 patent.

114.    Upon information and belief, Colt alleges that Defendants' foregoing infringing acts have been with full knowledge of Colt's rights and interests, thereby constituting willful patent infringement.

115.    Colt has been damaged by Defendants' acts as alleged in this complaint, and Defendants have improperly profited thereby. Defendants are therefore liable to Colt for money damages pursuant to 35 U.S.C. § 284. Colt is entitled to a complete accounting of all revenue derived by Defendants from the unlawful conduct alleged herein in order to determine the full amount of money damages which Colt has suffered due to Defendants' acts of infringement, with Colt being entitled to damages adequate to fully compensate it for the infringements.

116.    The harm to Colt arising from Defendants' acts of infringement of the '224 patent is not fully compensable by money damages. Rather, Colt has suffered and continues to suffer irreparable harm which has no adequate remedy at law, and which will continue unless Defendants' conduct is enjoined. Defendants must therefore be enjoined and deterred from any further violations of Colt's rights in the '224 patent through a permanent injunction.

117.    Colt has complied with 35 U.S.C. § 287 as to the '224 patent to the extent required by law.

118.    Defendants should also be required to pay Colt's attorneys' fees, expenses, and costs for their willful and blatant disregard of Colt's patent rights.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Colt, respectfully asks this Court to enter judgment against Defendants, Quasar, Vitec, Herc, Cinelease, Sony, Warner Bros., Fox, Mr. Strong, Mr. Gonzales, Mr. Yowler, and Mr. Brown, and against their subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees, and all persons in active concert or participation with Defendants, granting the following relief:

A.    A finding that Defendants have directly infringed the '642 patent.

B.    A finding that Defendants have induced infringement of the '642 patent.

C.    A finding that Defendants have committed contributory infringement of the '642 patent.

D.    A finding that Defendants have directly infringed the '924 patent.

E.    A finding that Defendants have induced infringement of the '924 patent.

F.    A finding that Defendants have committed contributory infringement of the '924 patent.

G.    A finding that Defendants have directly infringed the '582 patent.

H.    A finding that Defendants have induced infringement of the '582 patent.

I.    A finding that Defendants have committed contributory infringement of the '582 patent.

J.    A finding that Defendants have directly infringed the '895 patent.

K.     A finding that Defendants have induced infringement of the '895 patent.

L.     A finding that Defendants have committed contributory infringement of the '895 patent.

M.     A finding that Defendants have directly infringed the '473 patent.

N.     A finding that Defendants have induced infringement of the '473 patent.

O.     A finding that Defendants have committed contributory infringement of the '473 patent.

P.     A finding that Defendants have directly infringed the '224 patent.

Q.     A finding that Defendants have induced infringement of the '224 patent.

R.     A finding that Defendants have committed contributory infringement of the '224 patent.

S.     For an order preliminarily and permanently enjoining Defendants, and their officers, directors, agents, servants, attorneys, affiliates, and employees, and all other persons acting in concert with them, from committing any further acts of infringement (direct or indirect), including but not limited to, manufacturing, using, importing, offering to sell, offering to lease, leasing, and selling the Accused Products (or products colorably similar thereto), or aiding or abetting or assisting others in such infringing activities.

T.     For an order seizing and impounding all Accused Products and all manufacturing supplies in Defendants' possession or control.

U.     For an order directing Defendants to file with this Court and to serve on Colt within thirty (30) days after service on Defendants of the injunction granted herein, or such extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner

and form in which Defendants have complied with and are continuing to comply with the injunction and order of this Court.

       V.     For a judgment to be entered for Colt against Defendants awarding damages adequate to fully compensate Colt for the infringement that has occurred, and in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284.

       W.    For a judgment awarding to Colt pre-judgment and post-judgment interest until the award is fully paid.

       X.    For a judgment that Defendants have willfully and deliberately infringed Colt's patent rights, such that it is determined that this is an exceptional case entitling Colt to enhanced damages under the Patent Laws of the United States pursuant to 35 U.S.C. §§ 284 and 285.

       Y.    For an award to Colt of costs, expenses, and attorneys' fees incurred in bringing this action under the Patent Laws of the United States; and

       Z.    For such other and further relief as this Court may deem just and equitable under the circumstances.

Dated: February 17, 2022               Respectfully submitted,

Of Counsel:                       FARNAN LLP

| | |
|---|---|
| Matthew G. McAndrews | /s/ Michael J. Farnan |
| Kyle D. Wallenberg | Brian E. Farnan (Bar No. 4089) |
| NIRO McANDREWS, LLP | Michael J. Farnan (Bar No. 5165) |
| 21660 West Field Parkway, Suite 118 | 919 N. Market Street, 12th Street |
| Deer Park, Illinois 60010 | Wilmington, Delaware 19801 |
| (312) 755-8575 | Telephone:  (302) 777-0300 |
| Fax: (312) 674-7481 | Facsimile:   (302) 777-0301 |
| mmcandrews@niro-mcandrews.com | bfarnan@farnanlaw.com |
| kwallenberg@niro-mcandrews.com | mfarnan@farnanlaw.com |

*Attorneys for Plaintiff Colt International
Clothing, Inc. d/b/a Colt LED*