# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLT INTERNATIONAL CLOTHING, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> QUASAR SCIENCE LLC, CINELEASE, INC., SONY PICTURES ENTERTAINMENT INC., WARNER BROS. ENTERTAINMENT INC., and FOX CORPORATION, <br><br> *Defendants*. | Civil Action No. 22-cv-213-WCB |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Colt International Clothing, Inc., ("Colt") has asserted seven patents against five defendants in this patent infringement case: U.S. Patent Nos. 9,719,642 ("the '642 patent"), 9,845,924 ("the '924 patent"), 10,197,224 ("the '224 patent"), 10,411,582 ("the '582 patent"), 10,566,895 ("the '895 patent"), 10,718,473 ("the '473 patent"), and 11,293,600 ("the '600 patent").[1] The five defendants have moved to dismiss the claims against them in whole or in part. *See* Dkt. Nos. 40 (Cinelease, Inc.), 51 (Quasar Science LLC), and 54 (Sony Pictures Entertainment Inc., Warner Bros. Entertainment, Inc., and Fox Corporation). The motions are granted-in-part and denied-in-part. Cinelease has also filed a conditional motion to stay the proceedings against it

---

[1] The initial complaint in this case named a total of 11 defendants. Dkt. No. 1. The first amended complaint omitted two of the corporate defendants, *see* Dkt. No. 33, and the four individual defendants were subsequently dismissed pursuant to stipulation, *see* Dkt. Nos. 47, 48.

1

until Colt's claims against Quasar Science LLC are resolved. *See* Dkt. No. 41 at 12–14. That motion is denied.

I.   **Quasar's Motion to Dismiss**

Colt alleges that Quasar Science LLC (referred to here as Quasar Delaware) has infringed all the asserted patents except for the '600 patent.[2] Quasar Delaware argues, however, that Colt has failed to allege that it complied with the notice requirements of 35 U.S.C. § 287, and that all of Colt's claims for damages stemming from any pre-suit infringement of four of those patents—the '924, '473, '582, and '895 patents—should be dismissed.[3] Quasar Delaware does not contend that Colt's claim for pre-suit damages for infringement of the other two patents asserted against it—the '224 patent and the '642 patent—must be dismissed for lack of notice, *see* Dkt. No. 55 at 4 n.5, presumably because Colt's first amended complaint pleads compliance with section 287 as related to the '224 patent and the '642 patent. *See* Dkt. No. 33 at ¶¶ 66, 115.

---

[2] The parties refer to plaintiff Quasar Science LLC (without a comma) as Quasar Delaware to distinguish it from its alleged predecessor corporation, Quasar Science, LLC (with a comma), which the defendants refer to as Quasar California and Colt refers to as "Old Quasar." Although the parties' briefs are not entirely consistent in distinguishing between the two corporations (sometimes referring to the Quasar defendant as Quasar Science, LLC), I will follow the convention of referring to the two Quasar entities as Quasar California and Quasar Delaware, respectively.

[3] Quasar Delaware asserts that failure to plead compliance with the marking statute "constitutes a failure to state a claim upon which relief can be granted, and accordingly, the claims related thereto should be dismissed." Dkt. No. 55 at 6. To the extent Quasar Delaware means to request dismissal of the claims of infringement altogether, that assertion is unfounded. The consequence of failing to mark the patentee's products and failing to otherwise provide pre-suit notice of the defendant's infringement is not that the claims of infringement must be dismissed, but only that pre-suit damages cannot be awarded for the infringement. *Arctic Cat,* 876 F.3d at 1366 ("Section 287 is thus a limitation on damages, and not an affirmative defense."). Quasar Delaware appears to recognize that distinction in the conclusion of its motion, where it requests that the court "Dismiss Colt's claim against Quasar Delaware [sic] infringement of the '924, '582, '895, and '473 Patents to the extent Colt seeks past damages arising from such claims." Dkt. No. 55 at 7.

As to its claims against Quasar Delaware, Colt contends that it has complied with the notice requirements of section 287 with respect to the '924 patent, the '473 patent, and the '895 patent, but it does not make any such contention with respect to the '582 patent, *see* Dkt No. 63 at 2. I will therefore limit any damages award under the '582 patent to damages from infringement that occurred after the initial complaint was filed in this case.

A patentee that makes or sells a patented article and seeks damages for pre-suit infringement must either mark those articles as patented or prove "that the infringer was notified of the infringement and continued to infringe thereafter." 35 U.S.C. § 287(a). The patentee, moreover, bears the burden of both pleading and proving that it complied with the notice requirements of section 287.[4] *Arctic Cat Inc v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365–66 (Fed. Cir. 2017). Compliance with section 287 is a question of fact. *Id.* at 1366.

Colt does not contend that it marked any of its patent-protected articles with regard to the '924, '473, or '895 patents. To satisfy the requirement of pleading compliance with section 287(a) regarding pre-suit damages for those patents, Colt relies on the alternative means of satisfying section 287(a) by showing that the infringer was notified of its infringement of those patents and continued infringing thereafter. In undertaking to do so, Colt relies on events that took place between 2018 and 2021, which Colt contends gave Quasar Delaware notice, through its predecessor company Quasar California, that it was infringing the '924, '473, and '895 patents, and that Quasar Delaware continued to infringe those patents thereafter.

Colt's complaint alleges that in 2017 Colt filed an action in the Central District of California against Quasar California, Cinelease, and Warner Brothers, alleging that they had

---

[4] The complaint itself serves as notice of the patent for purposes of post-suit infringement damages.

3

infringed the '642 patent. In early 2018, Colt amended the complaint in that action, alleging that the defendants had also infringed the '924 patent. Dkt. No. 33 at ¶ 42. Shortly thereafter, Quasar California filed requests for reexamination of the '924 patent and the '642 patent. *Id.* at ¶¶ 43–46. Those reexamination proceedings resulted in orders confirming the patentability of many of the claims of both patents. *See* Dkt. No. 33 at Exhs. A & B.

Colt subsequently dismissed the California litigation without prejudice. *Id.* at ¶ 47. Several months later, on November 10, 2020, Colt asserted in a letter to counsel for Quasar California, Cinelease, and Warner Bros. that Quasar California was selling and/or leasing products to other parties, including Cinelease and Warner Bros., and that those products infringed the '895 and '473 patents. *Id.* at ¶ 48.

In early 2021, according to the complaint, Vitec Group US Holdings, Inc., organized Quasar Delaware for the purpose of making a limited asset purchase from Quasar California. *Id.* at ¶ 8. The complaint alleges that a number of members of the management team of Quasar California, including the CEO of Quasar California, became members of the management team of Quasar Delaware and assumed positions similar to those they had with Quasar California. *Id.* at ¶¶ 13–16.

According to the complaint, Colt's counsel subsequently contacted the general counsel of the Vitec Group to explore the possible resolution of the parties' ongoing patent dispute, but the parties were unable to reach an agreement. *Id.* at ¶ 49. The complaint further alleges, on information and belief, that neither Quasar California nor Quasar Delaware has stopped marketing the products accused in the California litigation, nor have they altered the products they have been marketing. *Id.* at ¶ 50. In sum, the complaint alleges that Quasar California was aware of the '924 patent by at least September 4, 2019, when it sought reexamination of that patent, and was aware

of the '895 and '473 patents by at least November 10, 2020, when Colt notified counsel for Quasar California that it was marketing products that infringed those patents. *Id.* at ¶ 51.

Quasar Delaware argues that Colt's allegations tend to show, at most, that Quasar California was on notice of the '924 patent, but not that that Quasar Delaware had such notice. The notice to Quasar California is inconsequential, the defendants argue, because any infringement by Quasar California is not chargeable to Quasar Delaware, a legally distinct corporate entity. Dkt. No. 75 at 3. In addition, Quasar Delaware argues that it "has not and does not make several of the products accused of infringement." *Id.* at 3 n.2. But the complaint alleges that Quasar Delaware has not altered the products offered by Quasar California and has "not stopped their marketing, conduct, or dealings with respect to the Accused Products since first learning of the Colt patents." Dkt. No. 33 at ¶ 50. For purposes of the motion to dismiss, those factual assertions must be taken as true, and as such the complaint provides a plausible basis for belief that Quasar Delaware, as the successor to Quasar California, was on notice of the '924 patent since before the initial complaint in this case was filed and that it continued to infringe thereafter.

With respect to the '473 and '895 patents, the defendants again rely on the separate corporate status of Quasar California and Quasar Delaware, arguing that information known to Quasar California is not attributable to Quasar Delaware. But the allegations in the complaint—that the top management of Quasar California continued to serve as the top management of Quasar Delaware, and that Quasar Delaware continued to sell the products previously sold by Quasar California—provide a sufficient basis from which to infer that Quasar Delaware is chargeable with knowledge of the '473 and '895 patents and may be infringing them.

The extent of Quasar Delaware's liability, if any, for pre-suit infringement may ultimately depend on whether it should be treated as a successor to Quasar California, subject to the

knowledge and liability of its predecessor, or should be treated as a distinct entity that is neither liable for its predecessor's torts nor chargeable with its predecessor's knowledge of the patents applicable to its products. *See, e.g., Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1377–82 (Fed. Cir. 2010). For purposes of Quasar Delaware's motion to dismiss, however, Colt has made sufficient allegations to justify giving it an opportunity to prove liability for pre-suit infringement, at least as of the time Quasar Delaware was organized and began making sales of the accused products.

For those reasons, Quasar Delaware's motion to dismiss any claim for damages attributable to pre-suit infringement of the '924, '895, and '473 patents will be denied. Because Colt has stated that it does not intend to pursue pre-suit damages with respect to the '582 patent, Quasar Delaware's motion to dismiss any claim for damages attributable to pre-suit infringement of that patent will be granted.

**II. Cinelease's Motion to Dismiss and for a Stay**

Cinelease seeks dismissal of the infringement claims against it in Counts IV and V of the complaint on several grounds. First, with respect to products obtained by Cinelease prior to the issuance of the '895 and '473 patents, Cinelease argues that the complaint fails to provide "notice of what activity is being accused of infringement." Dkt. No. 41 at 6. Second, Cinelease argues that the allegations of pre-suit knowledge are inadequate to support the claim that Cinelease willfully infringed the '895 and '473 patents. Third, Cinelease contends that Colt's claim of damages for infringement of the '895 and '473 patents should be dismissed for failure to mark the products in question. In addition, Cinelease argues that the claims against it should be stayed pending the resolution of Colt's claims against Quasar Delaware, Cinelease's supplier.

6

  **a.** As to the first argument, Cinelease contends that the complaint "purports to create some unique liability for Cinelease based on the sale or use of the Pre-Patent Issuance Products." *Id.* at 7. That is not a fair characterization of the allegations in the complaint. The complaint alleges that Cinelease purchased a substantial volume of the accused products from Quasar California before any of the Colt patents issued, but then leased and/or sold those products to Warner Bros., Sony, and Fox after one or more of those patents issued. Dkt. No. 33 at ¶ 37. The complaint further specifies that Cinelease used, leased, and offered for sale certain of those same products—the Crossfade Lights—after the issuance of the '473 and '895 patents, thereby infringing those patents. *Id.* at ¶¶ 55–56.

  With respect to the allegations regarding Cinelease's acquisition of the accused products from Quasar California prior to the issuance of the asserted patents, Colt's complaint makes clear that Cinelease's pre-issuance purchase of those products was not infringing, and that the infringing acts are limited to the post-issuance use, leasing, and sale of those products. Dkt. No. 33 at ¶ 37. Thus, contrary to Cinelease's characterization, Colt does not have "a unique claim against Cinelease based on Pre-Patent Issuance Products." Dkt. No. 41 at 7. The allegations of the complaint simply clarify that the pre-issuance transfers of the accused products from Quasar California to Cinelease was not infringing, but that Cinelease's infringement began when it sold or leased those products to others after the asserted patents issued. Each count of the complaint lists the particular products that the defendants, including Cinelease, are accused of having leased or sold, and alleges that Cinelease's liability is predicated on its activity in leasing and selling those identified products after the issuance of one or more of the asserted patents.

  **b.** Cinelease also contends that the allegations of pre-suit knowledge in the complaint are inadequate to support Colt's claim that Cinelease willfully infringed the '895 and '473 patents.

In particular, Cinelease asserts that it is not chargeable with pre-suit knowledge of the '895 and '473 patents for two reasons. First, Cinelease contends that the initial complaint in this case cannot serve as notice of Cinelease's pre-suit knowledge of the patents as of the date of that initial complaint. *See* Dkt. No. 41 at 8–9 (citing *ZapFraud, Inc v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 252 (D. Del. 2021)). Second, Cinelease takes issue with Colt's claim that a November 10, 2020, communication from Colt's attorney to an attorney who represented Cinelease in the litigation brought by Colt in California was effective to give Cinelease notice of those patents as of that date.

As to the first point, courts in this district and elsewhere are divided as to whether an initial complaint can serve as pre-suit notice of asserted patents in a case in which an amended complaint is later filed. *See CRH Med. Corp. v. MDE Med., LLC*, No. 25-95, 2025 WL 2506804, at *3 & n.3 (D. Del. Sept. 2, 2025) (collecting cases); *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 700 F. Supp. 3d 189, 202–03 (D. Del. 2023) (collecting cases). I have previously ruled that an initial complaint can serve as pre-suit notice of particular patents when those patents are later asserted in an amended complaint in the same case. I adhere to that position in this case and thus hold that Cinelease can be deemed to have had knowledge of the '895 and '473 patents for purposes of Colt's allegation that Cinelease's willful infringement began at least as of the date of the initial complaint.

As to the second point, Colt alleges that on November 10, 2020, while the California patent infringement litigation was pending against Quasar California, Cinelease, and Warner Bros., Colt's attorney sent a letter to Cinelease's counsel of record stating that Cinelease was engaged in infringing activity covered by the '895 and '473 patents, Dkt. No. 33 at ¶ 48, and thus that Cinelease was aware of those patents and the alleged infringement of those patents by that date, *id.* at ¶ 51. Cinelease asserts that the November 2020 letter could not provide the requisite notice

8

regarding the '895 and '473 patents because the attorney Colt contacted in November 2020 was not representing Cinelease in the California litigation at that time, since the California litigation had been dismissed as of February of that year. Dkt. No. 41 at 9–10. Colt asserts that the attorney who represented Cinelease in the California litigation was still representing Cinelease on November 10, 2020, and that as a result Cinelease is chargeable with knowledge of the '895 and '473 patents as of that date. As support for its contention, Colt asserts that one of the attorneys to whom Colt's counsel sent the November 10, 2020, letter called Colt's counsel to discuss options for resolving Colt's dispute with his clients, including Cinelease. Dkt. No 57 at 8.

While neither the details of the California litigation nor the circumstances of the exchange between counsel following the November 10, 2020, letter were specifically alleged in the complaint,[5] the complaint did assert that the attorney who received the November 10 letter was representing Cinelease at that time. *See* Dkt. No. 33 at ¶ 48. That allegation, which must be taken as true for purposes of the motion to dismiss, is sufficient to raise a factual issue as to whether Cinelease is chargeable with knowledge of the two patents as of that date, an issue that can be resolved either prior to trial or at trial. I therefore deny Cinelease's motion to dismiss the allegations of pre-suit willfulness on Cinelease's part.

    **c.** Cinelease next contends that Colt is not eligible for pre-suit damages for infringement of the '895 and '473 patents, because Colt failed to allege that it marked the articles that embodied the asserted claims of those patents. Dkt. No. 41 at 11.

---

[5] In support of its contention that the defendants were given notice of the '895 and '473 patent as of November 2020, Colt has submitted a declaration from its lawyer, together with a copy of the November 10, 2020, letter to counsel for the defendants in the California litigation. That declaration and letter were not attached to the complaint, however. Consequently, I have not considered that material in deciding the motion to dismiss, but have limited my consideration to the allegations in the complaint.

It is undisputed that Colt failed to allege that it marked its patented articles with those patent numbers, as required by section 287(a). As discussed above, however, section 287(a) provides that, as an alternative to marking, the plaintiff may show that "the infringer was notified of the infringement and continued to infringe thereafter." It is that alternative to marking that Colt invokes to establish pre-suit knowledge of the '895 and '473 patents, on which Colt's pre-suit willfulness claim is based. The failure to mark the articles that practice its patents is therefore not necessarily fatal to Colt's willfulness claim. For present purposes, it is enough to say that Colt's allegations are sufficient to survive Cinelease's motion to dismiss.

**d.** Finally, Cinelease argues that Colt's claims against it should be stayed pending resolution of the claims against Quasar Delaware, based on the so-called "customer suit exception" in patent law. The customer suit exception provides that under certain circumstances, a suit against a manufacturer of allegedly infringing goods should take precedence over a suit by the patent owner against customers of the manufacturer. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977). Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). The customer suit exception is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement and to guard against the possibility of abuse; the guiding principles in applying the customer suit exception are efficiency and judicial economy. *Id.* When the policies underlying the customer suit exception apply, Cinelease argues, courts have often held that the district court should stay the action against the customers until the action against the manufacturer

is resolved. *See Pragmatus Telecom, LLC v. Advanced Store Co.*, No. 12-88, 2012 WL 2803695, at *3 (D. Del. July 10, 2012).

Cinelease concedes that this case does not fit strictly within the customer suit exception, which applies when separate cases are brought against a manufacturer and its customer. But Cinelease argues that the policies underlying the customer suit exception are applicable here, and that a stay should be granted for the same reasons that stays are often granted in cases governed by the customer suit exception.

I will deny the motion to stay this case as to Cinelease for three reasons. First, this case does not satisfy all the requirements of the customer suit exception. In fact, the Federal Circuit has expressed skepticism regarding the proposition that in a case in the same posture as this one, a district court "must stay proceedings against a customer in the very same litigation that will, regardless of the requested stay, go forward against the supplier." *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015).

Second, I note that this case, which was filed three and one-half years ago, is still a long way from trial, and a stay would likely result in significant further delay in the ultimate resolution of the case. If at a later point in the litigation it appears that the case against Cinelease (or against any of the other defendants) should be severed from the case against Quasar Delaware, I can do so at that time. At this point, however, it appears to be more efficient to deny the stay and have the pretrial proceedings with respect to all of the defendants conducted simultaneously.

Third, at an earlier point in this case, while the case was assigned to Judge Williams, he denied a motion by the Studio Defendants for a stay based on the customer suit exception. *See* Dkt. No. 94. While that order may not technically be law of the case for purposes of Cinelease's request for a stay, the order is persuasive, and it would require a strong showing of changed

11

circumstances to justify taking a different position with respect to Cinelease's request for a stay from the position taken by the court in response to the Studio Defendants' similar request. Cinelease's motion for a stay is therefore denied.

### III. The Studio Defendants' Motion to Dismiss

Sony Pictures Entertainment, Warner Bros. Entertainment, and Fox Corporation (collectively, "the Studio Defendants") seek dismissal of most of the claims against them, based in part on arguments similar to those raised by the other defendants. The issues with respect to the Studio Defendants have been simplified by disclaimers made by Colt in its response: Colt has stated that it does not oppose dismissal of its claims to pre-suit damages against Sony and Fox for infringement of the '924, '473, '582, and '895 patents; it does not oppose dismissal of its claim for pre-suit damages against Warner Bros. ("Warner") for infringement of the '924 and '582 patents; and it does not oppose dismissal of its claim of willful infringement by Warner for infringement of the '924 and '224 patents. As a result, the only remaining issues pertaining to the Studio Defendants are Warner's claim that it is not subject to pre-suit damages for the '895 and '473 patents or a finding of willfulness for infringement of the '895, '473, and '642 patents, and the Studio Defendants' contention that Colt's allegations regarding the '600 patent are insufficient to state a claim of infringement.

**a.** Warner contends that Colt has not pleaded compliance with the requirements of section 287(a) of the Patent Act, and therefore Colt is not entitled to any damages that may have accrued prior to the filing date of the initial complaint in this case, February 17, 2022, for infringement of the '895 and '473 patents. Dkt. No. 56 at 9–10.

It is undisputed that Colt did not mark the articles embodying the inventions of those four asserted patents. The question, then, is whether Colt has adequately alleged that it satisfied section

287(a) through the alternative statutory means, i.e., by providing actual notice of the infringement of those patents to the Studio Defendants. Relatedly, Warner contends that it was not given notice of the '895, '473, and '642 patents prior to the filing of the complaint in this case, and therefore it cannot be held liable for willful infringement.

The same allegations that support the claim that Quasar Delaware and Cinelease had knowledge of Colt's infringement claims regarding the '895 and '473 patents also provide support for Colt's contention that Warner obtained knowledge of those infringement claims against it. That is, the November 10, 2020, letter sent by Colt's attorney was sent to counsel representing all three parties to that litigation, including Warner. Dkt. No. 33 at ¶ 48. Just as that letter was sufficient to put the other two parties on notice of their alleged infringement of the '895 and '473 patents, it was equally sufficient to put Warner on such notice.

As for the '642 patent, Colt alleges that in 2017 it provided written notice to Warner asserting that Warner was infringing that patent. Dkt. No. 33 at ¶ 40. That patent was then asserted against Warner in previously filed California litigation. *Id.* at ¶ 41. In addition, Colt alleges that it later sent a follow-up letter to Warner in March 2019 renewing Colt's allegation that Warner infringed the '642 patent following a successful reexamination proceeding in which the Patent and Trademark Office confirmed the patentability of several claims of the '642 patent. *See id.* at ¶ 44. Those allegations are sufficient to avoid dismissal of Colt's claim of pre-suit damages for Warner's alleged infringement of the '895 and '473 patents as well as Colt's claim of willfulness for Warner's alleged infringement of the '895, '473, and '642 patents.

**b.** The Studio Defendants next contend that the complaint failed to include factual allegations sufficient to support a facially plausible claim that they have infringed the '600 patent. Dkt. No. 56 at 10–14. Because the '600 patent is a method patent, Colt must show that the

defendants infringed the patent by practicing every step of the claimed method. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed Cir. 2015); *Meyer Intel. Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012). The Studio Defendants contend that the allegations regarding the '600 patent must be dismissed because Colt has merely alleged, in conclusory fashion, that the accused products "are used in a method that contains each and every element of at least one claim of the '600 patent both literally and under the doctrine of equivalents" and that "the S-Switch and Crossfade lights are used in methods that infringe at least claims 1, 2, 5, 6, 8, 9, 10, 11, and 13 of the '600 patent." Dkt. No. 33 at ¶ 119.

The Studio Defendants argue that the allegations regarding infringement of the '600 patent fail to provide proper notice of what products they are allegedly using to infringe and how they are allegedly practicing the method claims in an infringing manner. Although the complaint alleges that the Studio Defendants have infringed the '600 patent through the use of two types of accused products, the "S-Switch Lights" and the "Crossfade Lights," the defendants complain that the complaint lists a large number of models for each of those two designs and does not specify which models the Studio Defendants have allegedly used to infringe.

That contention is unpersuasive. It is sufficient for the complaint to list the two types of accused products that are alleged to be at issue in the count that is directed to infringement of the '600 patent. Although the complaint added references to the particular models of those products that are allegedly used in practicing the infringing methods, that degree of specificity is not essential to the Studio Defendants' ability to fashion their defense.

The most detailed allegations of infringement of the '600 patent are found in Exhibit U, which is attached to the complaint and therefore may be considered on this motion to dismiss. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 34 (Fed. Cir. 2024); *McTernan v. City of York, Pa.*, 577

F.3d 521, 526 (3d Cir. 2009); *He Depu v. Yahoo! Inc.*, 950 F.3d 897, 901 (D.C. Cir. 2009). Exhibit U describes the accused products in great detail and sets forth how those products satisfy each of the structural limitations of the asserted claims of the '600 patent. *See* Dkt. No. 33-21, Exh. U, at 1–9. The allegations regarding the method limitations of those claims are set forth in pages 9 through 12 of Exhibit U. Although those allegations are based "upon information and belief," that form of pleading is permissible in a case such as this one, in which the knowledge of the methods the defendants use in practicing the claimed inventions are peculiarly in the defendants' exclusive possession. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015); *Thomson Reuters Enter. Centre GmbH v. Ross Intel. Inc.*, 538 F. Supp. 303, 313 (D. Del. 2021); *British Telecomms. PLC v. IAC/InterActiveCorp.*, 381 F. Supp.3d 293, 299 (D. Del. 2019); *Prowire LLC v. Apple, Inc.*, No. CV 17-223, 2017 WL 3444689, at *5 (D. Del. Aug. 9, 2017); *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 474 (D. Del. 2012) ("The Third Circuit has held that a complaint must be viewed in the 'light most favorable to plaintiff and the truth of all facts well pleaded, which includes facts alleged on information and belief.'") (quoting *Frederick Hart & Co. v. Recordgraph Corp.*, 169 F.2d 580, 581 (3d Cir. 1948)). The factual allegations in the complaint are therefore sufficient to make out a facially plausible claim that the Studio Defendants have infringed the asserted claims of the '600 patent.

## IV. Conclusion

Based on the analysis set forth above, the defendants' motions to dismiss will be denied except in the following respects: Colt will not be allowed to seek (1) pre-suit damages against Sony and Fox as to the '924, '473, '582, and '895 patents; (2) pre-suit damages against Warner as

to the '924 and '582 patents; (3) willful infringement against Warner as to the '224 and '924 patents; and (4) pre-suit damages from Quasar Delaware as to the '582 patent.

    IT IS SO ORDERED.

    SIGNED this 19th day of September, 2025.

                                                    WILLIAM C. BRYSON
                                                    UNITED STATES CIRCUIT JUDGE